UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
SHREVEPORT DIVISION

UNITED STATES OF AMERICA                CASE NO. 17-cr-00163-01

VERSUS                                  CHIEF JUDGE HICKS

RODOLFO BAIRES (01)                     MAGISTRATE JUDGE HORNSBY


**MEMORANDUM ORDER**

**Introduction; Factual Background**

Rodolfo Baires ("Defendant") is charged with one count of conspiracy to distribute methamphetamine. Defendant was brought to the attention of the DEA through a cooperating source ("CS"), whose identity is now known to Defendant, but who will be referred to herein simply as the CS.

According to the Government, the CS provided information regarding a source of supply of methamphetamine, known as "Seiko," in Las Vegas Nevada. The CS told the Government that a large shipment of the drugs was to be delivered to Northwest Louisiana by James Logan ("Logan"), a courier for Seiko. Logan is a co-defendant in this case who has pleaded guilty to a drug conspiracy charge (Doc. 11, Count 1) and is awaiting sentencing.

Logan was stopped for a traffic violation as he entered Louisiana, and a large quantity of drugs were discovered during a search of his vehicle. Following the traffic stop on Logan, the CS and Seiko spoke by phone regarding Logan's location. Eventually, the Government obtained a search warrant for location information regarding Seiko's phone.

GPS or other location data for Seiko's phone pointed to a Las Vegas residence previously associated with Defendant. Agents located a photograph of Defendant from a prior case and showed that photograph to the CS, who recognized the photograph as Seiko. Defendant was subsequently arrested and charged.

**Motions Before the Court**

Before the court are the Government's Motion to Quash Subpoenas (Doc. 78) and Defendant's Sealed Motion to Compel Discovery (Doc. 85). The discovery dispute arises out of the DEA investigative file on the CS.

On July 24, 2018, Defendant had subpoenas served to the Shreveport Police Department and Bossier City Police Department commanding them to produce (1) all expense reports for TFO officers Tim Wynn and Rick Anderson for trips to Las Vegas made in relation to a drug trafficking investigation involving the CS, (2) the complete arrest record for the CS, (3) the search warrant for the home of the CS, and (4) all offense reports in which the CS was either a suspect, complainant, or witness. The Government filed its motion to quash the subpoenas, arguing that the subpoenas were a "fishing expedition" and an attempt to obtain the documents without allowing the Government to object based on relevancy and admissibility.

On August 8, 2018, Defendant filed a motion to compel, which sought the documents and evidence listed in the subpoena, as well as several other items. Defendant asserts that the evidence sought is relevant to impeach the CS, to establish an alternate source of the drugs, and to make an argument that the affidavit in support of Defendant's arrest should be revised pursuant to Franks v. Delaware, 98 S.Ct. 2674 (1978). Defendant

suggests that the CS identified Defendant from the photograph to deflect police attention to the CS's true source of narcotics. Defendant argues that the various police records documenting the CS's criminal history, including the facts of those other cases, are relevant to establish alternate suspects, impeachment, and the propriety of the police methods of investigation and identification in this case.

**Analysis**

The court has conducted an extensive *in camera* review of the DEA's file on the CS. Based on that review and on applicable law, the motions are **granted in part and denied in part** as follows:

**1. CS Records**

Defendant seeks to compel discovery of all police files and records on the CS. According to Defendant, he was arrested after the CS identified him to law enforcement. He therefore asserts that all the records on the CS are necessary because the CS's credibility is in question. The Government objects to Defendant seeking "every police report that includes [the CS]'s name" because it is "an unrealistic request" that does not comport with the rules of discovery. Nonetheless, the Government asserts that it has provided all evidence from the CS's file that is relevant to this case and has only withheld a cooperating individual file in an unrelated arrest and the arrest of a target in an unrelated investigation. The court has conducted an *in camera* review and finds that the information regarding the unrelated arrest and an unrelated investigation are not relevant or material to this case.

## 2. Police Travel Records

Defendant requests the records documenting when Louisiana police traveled to Las Vegas, Nevada after tracking the CS there. Defendant contends that police made at least two trips to Las Vegas, but Defendant has been unable to determine when the trips were made. Defendant asserts that these records are relevant to the defense because they suggest the existence of an alternate source of the drugs.

The Government responds that the officers traveled to Las Vegas on a prior occasion to execute the arrest warrant on Defendant but were unsuccessful. The Government asserts that the mere travel records will neither help disprove the government's case nor will they assist in impeaching any government witness. The Government's argument on this point is persuasive. The records are not relevant or material to this case.

## 3. CS Criminal History

Defendant requests all arrests, offense reports, cooperation agreements, police notes, video, audio, photos and any other evidence of the CS's criminal history. Defendant argues that the criminal history of the CS, and the facts of those cases, are relevant to impeachment, establishment of alternate suspects, and his Franks argument. The Government represents that the arrest record or "rap sheet" of the CS has been tendered to Defendant in discovery. The court finds that Defendant's request is overly broad and constitutes an improper fishing expedition. The Government's prior response is satisfactory.

### 4. Text Messages

Defendant requests all text messages between the police and the CS. Defendant acknowledges that local counsel has been allowed to review selected messages that police determined to be relevant. Defendant contends that all the text messages are necessary for establishing that the CS was not credible and for making his Franks argument. The government did not respond specifically to this request. The court finds that Defendant's counsel should be given access to the additional text messages related to *this* investigation.

### 5. Truck and Credit Cards

Defendant requests any reports regarding a Nissan truck that the CS allegedly stole and credit cards of a different defendant found in the truck. Defendant again contends that this information is necessary for establishing that the CS was not credible and for making his Franks argument. The Government did not specifically respond to this request. The court finds that this request is reasonable and should be allowed.

### 6. Names of Officers Who Participated in Las Vegas Investigation

Defendant requests the names of all officers and agents who participated in the investigation that took place in Las Vegas. He states that this request "encompasses travels on the instant case as well as past trips involving [the CS]." Defendant argues that these officers and agents are witnesses who can supply direct evidence and impeachment evidence. He also represents that the information is relevant to his Franks argument.

The Government responds that it has already revealed the names of the officers who traveled to Las Vegas to execute the arrest warrant on Defendant. It named the following officers in its response to Defendant's motion: DEA TFO Rick Anderson, DEA Special

Agent Jimmy Ogden, and DEA TFO Tim Wynn. The court finds that Defendant's request is overly broad; the Government's response is acceptable.

### 7. Las Vegas Investigation Report

In his reply to the Government's response to the Motion to Compel, Defendant asserts that he is entitled to a report detailing the activities of the officers while they were in Las Vegas. Defendant asserts that this report is necessary to determine the presence of other suspects in the locations where the phone (allegedly belonging to Defendant) was found. Defendant has consulted with an expert, retired DEA Agent Michael Levine, who opined that such reports "almost certainly exist"; however, the Government has informed Defendant that there is no such report. This request is denied; the court cannot order the Government to produce something that it represents to the court does not exist.

### 8. 2015 Las Vegas Investigation

Defendant requests all records from an unrelated 2015 investigation in which the CS in the instant case led DEA agents to a different source of drug supply in Las Vegas. Defendant contends that these records are relevant because, he alleges, it is improbable that the CS had two drug sources in Las Vegas. He also argues that the information would impeach the CS and support his Franks argument. The Government responds that the records from an unrelated investigation are not relevant to the instant proceeding. The court finds that it is *not* improbable that the CS may have had two drug sources. The information sought by Defendant is not relevant or material to this case.

9. **DEA Las Vegas Records:**

   Defendant requests all records of DEA Las Vegas concerning both the instant case and all other Las Vegas investigations involving the CS. The Government responds that such records are irrelevant unless pertinent to the pending case, and that all relevant reports have been made available to defense counsel for review. The only exception is a cooperating individual file in an unrelated arrest and the arrest of a target in an unrelated investigation. The court finds that the information sought by Defendant, beyond what the Government has already produced, is not relevant or material to this case.

10. **Recordings Made by and of the CS**

    Defendant requests all recordings made by the CS during the investigation that resulted in the instant charges, as well as recordings made of the CS during his other dealings in Las Vegas. Defendant contends that police officers gave the CS an audio recorder and instructed him to record the calls between himself and "Seiko". Defendant asserts that police took no steps to ensure that the recordings were authentic or complete. Defendant also seeks recordings made of the CS during his other dealings in Las Vegas, but he does not give a specific reason as to why he believes such recordings exist or how they may be relevant to the current case. The Government did not specifically respond to this request. The court finds that Defendant is entitled to access to all recordings between the CS and Seiko concerning the investigation that led to this case.

11. **Flight Records, Rental Car Records, and Hotel Records**

    Defendant seeks the disclosure of the CS's flight records to Las Vegas, rental car records from Las Vegas, and hotel records from Las Vegas. Defendant argues that this

information will support his Franks argument because it will show that police officers knew that the CS continued to deal methamphetamine but did not disclose this in their affidavit in support of Defendant's arrest. The Government did not specifically respond to this request. The court finds that Defendant is entitled to these records but only to the extent they pertain to *this* case.

**12. Cell Phone Tracking**

Defendant seeks all tracking data of the CS from Shreveport to Las Vegas. Defendant contends that these records are necessary to make his Franks argument. The Government did not specifically respond to this request. The briefs suggest that some tracking or ping information has already been provided. To the extent it has not been produced, and it is related to this case, the Government is ordered to provide it.

**Deadline**

The Government's supplemental production as set forth above is due no later than January 25, 2019, unless otherwise agreed to by the parties.

**CS Files**

The DEA is directed to promptly retrieve from chambers the files on the CS that were reviewed *in camera*.

**Defendant's Motion to Suppress (Doc. 68)**

Defendant is allowed until February 11, 2019 to file a supplemental memorandum in support of his motion to suppress. The Government's response is due 10 days later. Both sides must address the necessity of an evidentiary hearing. If necessary, a hearing will be set in due course.

THUS DONE AND SIGNED in Shreveport, Louisiana, this 11th day of January, 2019.

Mark L. Hornsby
U.S. Magistrate Judge